406 So.2d 306 (1981)
Joseph AUGUSTINE, et al, Plaintiffs-Appellees,
v.
M. J. DICKENSON, et al, Defendants-Appellants.
No. 8476.
Court of Appeal of Louisiana, Third Circuit.
November 10, 1981.
*307 Voorhies & Labbe, Richard D. Chappuis Jr., Lafayette, Michael Johnson, Cottonport, for defendants-appellants.
Knoll & Knoll, Jerold E. Knoll and Kerry L. Spruill, Marksville, for plaintiffs-appellees.
Before DOMENGEAUX, SWIFT and YELVERTON, JJ.
YELVERTON, Judge.
This is a suit brought by five property owners for damages to their vegetable gardens, fruit trees and other plants. Original plaintiffs were Joseph Augustine, Anne Bell Hudson, Loubirtha Williams,[1] Herman Lockwood and Lurlean Turner. The damages were allegedly caused by a crop dusting operation on a neighboring estate and a resulting drift of airborne herbicides down onto plaintiffs' properties. Defendants are M. J. Dickenson, d/b/a M. J. Dickenson Flying Service, and U.S. Fire Insurance Company, Dickenson's insurer. The trial judge found that plaintiffs suffered property losses caused by the aerial spraying of herbicides by Dickenson, and awarded damages to each plaintiff, totalling $3500, against both defendants. From this judgment Dickenson and his insurer have appealed. We affirm.
The appeal assigns two errors. First, appellants contend that the trial judge erred in reaching the factual conclusion that the Dickenson spraying operation caused the damage to plaintiffs' gardens, trees and other vegetation. The other complaint is that the damages awarded are not supported by the evidence.
We will now discuss these two assigned errors under the headings "Causation" and "Damages".

CAUSATION
The testimony is uncontroverted that in early May, 1980, M. J. Dickenson did aerial spraying on a field belonging to Kent Thevenot in Avoyelles Parish. Mr. Dickenson said he sprayed a chemical known as "Paraquat" on the field to kill Johnson grass, preparatory to the owner planting his soybeans. This chemical, according to both Dickenson and Earl Dubea, an agricultural inspector for the Louisiana Department of Agriculture, is a defoliant. It burns the leaves off of plants. Mr. Dubea explained that although it is designed to kill Johnson grass and weeds, Paraquat works with equally deadly effect on vegetable plants, even trees.
The homes of the five plaintiffs here were lined up on one side of Gremillion Lane, a country road. Thevenot's field was on the other side. Plaintiffs' gardens, fruit and nut trees, flower bushes, and lawn grass were in the immediate vicinity of their homes. Several witnesses testified that in early May aerial spraying took place on Thevenot's land across the lane. Some were outside and felt the chemical as it drifted down on the lane and in their yards.
They testified that this was the only occasion in 1980 that an airplane sprayed in the area of their homes. The plaintiffs testified that almost immediately dots, then brown spots, began to appear on leaves, and *308 most plants simply died, all leaves dropping off. Earl Dubea of the Louisiana Department of Agriculture testified that he went to plaintiffs' property one month after the spraying and found widespread defoliation typical of Paraguat's effects in the areas of plaintiffs' homes, their gardens and their trees.
Thus a summary of the evidence as to causation is that Dickenson was in the air when and where the damage occurred, he was spraying a defoliant and plaintiffs' plants were defoliated, and no other spraying occurred within the time period that is relevant. The trial court's conclusion that this spraying operation was the cause of plaintiffs' loss is amply supported by the evidence.

DAMAGES
Of the five property owners who are plaintiffs, Joseph Augustine was found by the trial court to have suffered the most damage. He was awarded $1000. Anne Bell Hudson was awarded $500; Loubirtha Williams, $800; Herman Lockwood, $750; and Lurlean Turner, $450.
Each plaintiff had heavily damaged vegetable gardens. Some suffered damage to their fruit and other trees, and to flowers and lawn grass. They raised produce for some outside sales but mostly for home use. In Bourg v. Cane Air, Inc., 325 So.2d 738 (La.App. 1 Cir. 1976), damages for such losses were calculated on the basis of type of vegetable, row length, expected yield, and wholesale values.
Augustine testified that he had forty 75' rows of corn that he was cultivating for his family's personal consumption and to feed his hogs and chickens. He also had pecan trees from which he had sold in previous years from $300 to $400 worth of pecans. He lost almost all of his corn crop and made nothing off his pecan trees. He said he sold plums in years past but the defoliated plum trees produced nothing in 1980. He had a peach tree that died and a fig tree that died along with a willow tree, some hedges and St. Augustine grass on one side of his house. He also lost all the other vegetables growing in his garden such as beans, squash, tomatoes and okra. He testified that he packaged and froze corn and other vegetables for his deep freeze for off-season consumption.
The other plaintiffs testified in similar detail to their individual losses.
The witness Nolan Joseph Armand, manager of Piggly-Wiggly grocery in Marksville, was called by plaintiffs to establish prices of certain produce in his store. He gave prices as of January 22, 1981, the date of trial, stating that these prices were higher than they were in July of 1980, and also that these were retail prices.
Earl Dubea, Agricultural Inspector for the Louisiana Department of Agriculture, testified for the defendants. He said that he went to the plaintiffs' properties about a month after the spraying and that he found widespread and in most cases total damage to the growing things there. Dubea made a partial estimate of damages to the crops based on his inspection of the properties approximately one month after the spraying.
Neither Armand nor Dubea was qualified as an expert witness regarding the values of crops.
There were five plaintiffs in this case and the losses were multiplied by a number of different vegetable crop losses asserted by each plaintiff. Plaintiffs' damages were based primarily on their own testimony. Since none of them are commercial farmers, they kept no records, and the testimony was based solely on memory and was necessarily estimated and sometimes sketchy.
When it is clear that a plaintiff has sustained some damages as a result of the fault of the defendant, according to our well settled jurisprudence, his demands will not be rejected merely because he cannot establish exactly the amount suffered. Under such circumstances the court must fix the quantum as best it can, and, in this connection, the trial judge is vested with much discretion. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971); Derouen v. Department of Transportation *309 and Development, 392 So.2d 765 (La.App. 3rd Cir. 1980). See also Manuel v. Texas Gas Transmission Corporation, 153 So.2d 157 (La.App. 3rd Cir. 1963) (loss of crawfish in pond); Trahan v. Bearb, 138 So.2d 420 (La.App. 3rd Cir. 1962) (loss of cotton crop from herbicide sprayed aerially); Brantley v. Tremont and Gulf Railway Company, 226 La. 176, 75 So.2d 236 (1954) (loss of minnows in pond); and Harrison v. Petroleum Surveys, Inc., 80 So.2d 153 (La. App. 1st Cir. 1955) (loss of muskrats from trapping area). In reviewing an award of damages, the question is not whether a different award might have been more appropriate, but whether the award of the trial court can be reasonably supported by the evidence and justifiable inferences from the evidence before it. Bitoun v. Landry, 302 So.2d 278 (La.1974).
In reviewing the evidence adduced at trial, we find that the trial court's assessment of damages was reasonable. The trial judge in giving his ruling discounted the testimony of Mr. Dubea as being unrealistic, and we find that the dollar amounts of appellants' losses attested to by Mr. Dubea were indeed unreasonably low. On the other hand, the retail prices of the prepared foodstuffs as testified to by Mr. Armand were much higher than the actual loss and accordingly not probative of the value of the crops consumed and sold by appellees. The trial judge recognized that the appellees had failed to prove actual dollar loss. He thus based his awards largely on the testimony of the appellees themselves. We find that this evidence reasonably supports the trial court's awards. Therefore, we affirm the ruling of the trial court. All costs of this appeal are assessed against appellants.
AFFIRMED.
NOTES
[1] Loubirtha Williams died after the appeal was taken and her heirs, Ida Mae Willams Lockwood, Rilla Denise Duskin, Letha Ann Duskin, and Vera Marie Duskin, are substituted as parties-appellees in her place.