434 So.2d 191 (1983)
Jessie Rose PITRE, et al., Plaintiffs-Appellees,
v.
AETNA LIFE AND CASUALTY COMPANY, et al., Defendant-Appellant.
No. 82-603.
Court of Appeal of Louisiana, Third Circuit.
May 25, 1983.
Rehearing Denied July 14, 1983.
*192 Ronald Thompson, Baton Rouge, for defendant-appellant.
Ledet & Gaudin, Bruce Gaudin, Opelousas, for plaintiff-appellee.
Before STOKER, DOUCET and YELVERTON, JJ.
DOUCET, Judge.
This appeal arises out of a one-car accident which occurred on December 31, 1979, around 10:30 P.M. and involves a "defective shoulder" along a state highway. As a result of the accident Mr. Widnay Pitre was killed and his wife, Jessie Rose Pitre, was injured. Mrs. Pitre and her four children, Carroll Bruce Pitre, Joseph Karren Pitre, Charles Travis Pitre, and Brenda Pitre Rome, filed this action against the Louisiana Department of Transportation and Development (DOTD), pursuant to Rue v. State, Dept. of Highways, 372 So.2d 1197 (La.1979), alleging that DOTD was negligent in failing to maintain the roadway and shoulder and in permitting the shoulder to be dangerously lower than the roadway. They also alleged that DOTD was negligent in failing to warn drivers of a low shoulder, an upcoming bridge abutment, and a narrowing shoulder. The trial judge rendered judgment in favor of plaintiffs. DOTD appeals. We affirm.
Mrs. Widnay Pitre (Jessie Rose) went to church in the late afternoon, or evening, of December 31, 1979. Thereafter, she and Mr. Pitre ate dinner at home. About 8:00 o'clock P.M. they went to the home of Elvin Ortego, a friend and neighbor, and stayed until about 10:00 P.M. They left the Ortego house about 10:00 P.M., stopped at a nightclub for a short while, and about one-half hour after leaving Mr. Ortego's and after making the stop for a drink at the small club or bar, they had a wreck on their way to Ville Platte to a nightclub.[1]
At the time of the accident, Mr. Pitre was driving north on Louisiana Highway 167, accompanied by his wife. Mrs. Pitre estimated their speed to be 55 m.p.h. in a speed limit zone of 55 m.p.h., with 45 m.p.h. advisory speed for a curve. The Pitres had not driven along this stretch of the highway for several months. The area on which they were traveling had been recently resurfaced, however, the shoulders had not been raised to the level of the new roadbed. Testimony and photographs subsequently introduced at trial indicate the shoulder was at least two to four inches lower than the main traveled lane which is contrary to *193 DOTD rules and specifications. One of decedent's children, Joseph Pitre, who had worked for the Specifications Office of the Louisiana Department of Highways from 1973 to 1977, observed the area following the accident, noticed the drop-off and noted there were no "low shoulder" signs.
The shoulder along which the car traveled narrowed until it became non-existent at the bridge whereat the travel lane also narrowed. It appears that before Mr. Pitre was able to re-enter the highway, he reached the bridge guard rail. He struck the guard rail on the right side of the highway, crossed the highway and struck the guard rail on the left. His car then rolled over the bridge railing on the left side, landing in the ditch below. As a result of the collision, Widnay Pitre died the following day at the age of 53, survived by four children and a wife.
After trial on the merits, the trial judge found the shoulder was indeed defective and cause in fact of the accident. In his reasons for judgment, the trial judge stated "... the drop-off ... caused Mr. Pitre to lose control of his car, causing him to strike the guard rail, with the ensuing results..." Tr. 107. The trial judge also found that "... in no way was the deceased negligent..." such as to constitute victim fault. Tr. 108. Judgment was rendered awarding each of Mr. Pitre's children $50,000.00, with an award of $25,000 for the pain and suffering of the decedent prior to death. Additionally, Mrs. Pitre was awarded $150,000.00 for the loss of her husband and $25,000.00 for the injuries she herself sustained in the collision.
From that judgment DOTD appeals, alleging the trial court erred in: (1) finding a defect; (2) finding the condition of the highway was proximate cause of the accident; (3) failing to find Mr. Widnay's actions were the sole and proximate cause of the accident; and, (4) the award of damages.
An abrupt drop-off between a roadway and shoulder constitutes a defect. LeBlanc v. State, Dept. of Highways, 419 So.2d 853 (La.1982). The Department's duty to maintain safe highway shoulders encompasses the obligation to protect a motorist who inadvertently drives onto the shoulder. Rue v. State, supra; LeBlanc v. State, supra. Although the exact depth of the drop-off was not determined, it was generally agreed to be in excess of two inches with the maximum deviance assigned being 4 1/8". The trial judge noted that "... the State not only accepted a drop-off in excess of two inches but contracted for same." and concluded that such a deviation created a dangerous hazard. We agree with the trial judge that the drop-off constituted a defect in the highway. Accord: Edwards v. State, Dept. of Transportation and Development, 403 So.2d 109 (La.App. 3rd Cir.1981); Smith v. State, Dept. of Transportation and Development, 412 So.2d 685 (La.App. 2nd Cir.1982) writ denied, 413 So.2d 907 (La.1982); Brown v. Louisiana Dept. of Highways, 373 So.2d 605 (La.App. 3rd Cir.1979); Knotts v. State, Dept. of Highways, 395 So.2d 419 (La.App. 3rd Cir.1981) writs denied 400 So.2d 669, 700 (La.1981).
Causation is a question of fact as to which the trial court's determinations are entitled great weight and should not be disturbed absent manifest error. Smith v. State, supra; Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The trial judge found as fact that the shoulder defect was cause in fact of the loss of control of the vehicle. But for the drop-off, decedent might have regained control of his automobile before reaching the bridge. The negligence of DOTD need not be the only cause in fact of the injuries, but need be merely a substantial factor. Dixie Drive it Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (La.1962); LeBlanc v. State, supra. The record indicates Mr. Pitre was exercising reasonable care in angling gradually to re-enter, however, the proximity of the drop-off to the upcoming narrow bridge prevented him from doing so. Only two markers warned of the upcoming bridge and these were placed on the outer edge of the obstruction rather than inner edge as mandated by DOTD's Manual. The vehicle *194 collided between the travel lane and the marker placed at the outer edge. From our review of the record, we cannot conclude that the trial judge's determination relative to causation is clearly wrong.
For the same reasons, we reject appellant's assertion that Mr. Pitre's actions were the sole, proximate cause of the accident. The trial judge found that any intoxication on the part of Mr. Pitre played no part in the accident, found the Pitre vehicle was being operated within the posted speed limit and accepted the testimony of Mrs. Pitre that they had not traveled that area of the highway for several months and, therefore, they were not aware of the dangers created by the drop-off.
Appellant notes that the trial judge failed to specify whether it was imposing liability on the basis of regular negligence or strict liability. However, whether a tort claim for damages be tested under traditional negligence concepts or under strict liability (liability without fault) under LSA-C.C. Art. 2317, the same inquiry must be made: Did defendant's conduct or inaction pose an unreasonable risk of injury to others? Entrevia v. Hood, 427 So.2d 1146 (La.1983). DOTD contracted for a drop-off in excess of two inches and, for reasons assigned hereinabove, we find such a condition posed an unreasonable risk.
Finally, appellant contests all of the general damage awards. At the time of the accident, Mr. Pitre was 52 years old, drawing Social Security disability benefits and receiving a small pension from the Veterans Administration for disability. All four of his children were of major age. As aforementioned, the accident occurred at around 10:15 P.M. on December 31, 1979. The Pitres were trapped in their vehicle until a State Trooper arrived and broke out the rear window to take them out. Mr. Pitre was taken out of the car first and laid on the side of the road until both he and his wife could be taken to Opelousas General Hospital. Mr. Pitre complained of severe abdominal pain, and was placed under a general anesthetic approximately two hours after the accident for operation. He died the next morning at about 5:00 A.M. as the result of severe chest trauma, liver damage and blood loss. Mrs. Pitre herself was hospitalized, at the same time as her husband, due to several fractured ribs, the recovery of which required eight weeks. At the time of her husband's death, the Pitres had been married 34 years. Their family was particularly close, especially since Mr. Pitre had suffered a heart attack preceding the accident. After Mr. Pitre's death, Mrs. Pitre lost her trailer and resided with her son, Carroll Brace Pitre, leaving Opelousas for Baker, Louisiana. She subsequently returned to Opelousas to live with her mother. The record indicates the Pitres' enjoyed a close family relationship.
Before an appellate court can disturb an award made by a trial court the record must clearly reveal that the trier of fact abused its great discretion in making its award. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). From our careful review of the record, we cannot conclude that the trial judge clearly abused his "much discretion". LSA-C.C. Art. 1934(3).
For the reasons assigned, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.
STOKER, J., dissents and assigns written reasons.
STOKER, Judge, dissenting.
With respect I dissent from the majority holding in this case. Even accepting the majority's statement of facts as substantially correct, I respectfully submit that the result reached is incorrect. The reason that the conclusions of the trial court and the majority are in error is that with respect to the DOTD no causation-in-fact was ever shown.
Although it is clear that a two to four inch drop-off existed between the blacktop and the shoulder of the road, that drop-off did not cause Mr. Pitre to lose control of his vehicle. The shoulder was in good shape *195 and did not cause Mr. Pitre to lose control. All the evidence showed that Mr. Pitre had control of his vehicle and the majority admits that Pitre "was exercising reasonable care in angling gradually to re-enter" the highway when he struck the bridge guard rail. In fact, the majority concludes that "the proximity of the drop-off to the upcoming narrow bridge prevented him [Pitre] from" re-entering the highway. With respect, I cannot agree with this conclusion.
The drop-off, located some 300 feet from the guard rail, played no part in the chain of causation. The state trooper who investigated the accident stated that he followed the clear line of Pitre's tire tracks on the shoulder of the road. The tire tracks ran from the point of impact on the side of the right bridge guard rail for approximately 300 feet. The Pitres' sons testified that they observed one line of tire tracks on the shoulder of the road which angled toward the pavement and ended at the point of impact. (The trial court found that only the right wheels went off of the shoulder.) In fact, Mr. Pitre almost cleared the guard rail and nearly avoided the accident.
The presence of the bridge and the bridge guard rail was not a cause-in-fact of the accident. Although the bridge was clearly marked, the majority concludes that the two standard bridge markers facing Pitre were not placed "as mandated by DOTD's Manual." Assuming this conclusion is correct (with which I completely disagree), the signing or marking of the bridge had nothing to do with the accident. No marking deficiency was a cause-in-fact of the accident because, as shown by the pictures in evidence, the guard rails alone should have alerted Pitre to the presence of the bridge. Moreover, it is clear that Pitre was aware of the bridge because his actions in angling back toward the highway showed he was aware of the bridge. In any event, the pictures in evidence show the bridge and guard rails were clearly marked in the manner that common experience indicates they are customarily marked. See Exhibit One appended to this dissent which is a reproduction of a photograph in evidence in this case as P-14.
The essence of the majority opinion is that Mr. Pitre drove off the pavement at a point so close to the guard rail that he had insufficient distance and time within which to re-enter the highway before reaching the bridge guard rail. I cannot accept the conclusion that he did not have sufficient distance within which to regain the roadway when he had 300 feet within which to do it and his left wheels were on the highway. Moreover, it is totally inconsistent, as pointed out above, to conclude that but for the drop-off Mr. Pitre might have regained control of his automobile before reaching the bridge and at the same time conclude that he was exercising reasonable care in angling gradually towards a re-entry of the highway.
In summary, the facts as stated by the majority show simply that Mr. Pitre ran off the blacktop with his right wheels, traveled 300 feet without losing control and struck a clearly visible bridge guard rail. These facts do not establish fault on the part of the State under theories of either negligence or strict liability.
*196 
NOTES
[1] In this regard it should be noted that the trial judge unequivocably dismissed any influence of alcohol as a contributing factor in the accident, stating "[E]ven if it were said he was influenced by alcohol, there is nothing in such an assertion that indicated such contributed to the accident ... [T]here is no showing of victim fault ..." Tr. 108.