488 So.2d 491 (1986)
Everett R. McCORMICK, Plaintiff-Appellant,
v.
INSURED LLOYDS INSURANCE COMPANY, et al., Defendants-Appellees.
No. 85-682.
Court of Appeal of Louisiana, Third Circuit.
May 16, 1986.
*492 Michael W. Shannon, Alexandria, for plaintiff-appellant.
Gold, Simon, Dee D. Drell, Alexandria, for defendants-appellees.
Before STOKER and KING, JJ., and COX, J. Pro Tem.[*]
RONALD D. COX, Judge Pro Tem.
This is a tort suit by Everett R. McCormick against Henry Greer and his liability insurer for damages suffered by Mr. McCormick in a fall on a stepping stone path in front of Mr. Greer's shop. The trial judge found Mr. McCormick failed to prove by a preponderance of the evidence that his injuries were caused by a defect in the walkway, or by Mr. Greer's negligence in maintaining the walkway. We affirm.

FACTS
On the morning of August 10, 1982 Mr. McCormick stopped by to visit his neighbor, Mr. Greer, at his welding shop. After saying good-bye Mr. McCormick stepped down from the porch, turned and began walking along the stepping stone path. What occurred next is succinctly set forth in the trial judge's reasons for judgment as follows:

*493 "... Plaintiff ... testified that one of the stepping stones moved or tilted when he stepped on it, and that this was the cause of his fall.
"Greer had installed the stepping stones two or three years before the accident. He had leveled the ground, placed the concrete stepping stones on the ground, and spread sand and pea gravel around them. At some later time he added sand and gravel around the stepping stones. Mr. Greer and his wife testified that they and others had used the walkway on numerous occasions without difficulty, and that they had not noticed anything wrong with the stepping stones.
"Ten days after the accident defendant gave a statement to an insurance adjuster (D-1) in which he stated that he stepped `squarely on the concrete block', and `I am not sure what caused by (sic) left foot to slip off the round block in front of Mr. Greer's office.'
"Plaintiff had visited Mr. Greer on numerous other occasions and had traversed the walkway many times without difficulty."

DUTY OF OWNER OF IMMOVABLE PROPERTY
The owner of immovable property has a duty to keep his property in a reasonable safe condition. He must discover any unreasonably dangerous conditions on his premises and either correct the condition or warn potential victims of its existence. Boutte v. Pennsylvania Millers Mutual Insurance Company, 386 So.2d 700 (La. App. 3rd Cir.1980); Albritton v. J.C. Penney Company, Inc., 385 So.2d 549 (La.App. 3rd Cir.1980), writ denied, 393 So.2d 727 (La.1980). This duty is the same under the strict liability theory of LSA-C.C. art. 2317 as under the negligent liability theory of LSA-C.C. art. 2315. Shipp v. City of Alexandria, 395 So.2d 727 (La.1981); Shelton v. Aetna Casualty & Surety Company, 334 So.2d 406 (La.1976). The difference in proof between these theories of liability is that under LSA-C.C. art. 2315, it must be shown that the owner either knew or should have known of the risk, whereas under LSA-C.C. art. 2317, a plaintiff is relieved of proving the defendant's knowledge. Kent v. Gulf States Utilities Company, 418 So.2d 493 (La.1982); Buchanan v. Tangipahoa Parish Police Jury, 426 So.2d 720 (La.App. 1st Cir.1983).
Under either theory of liability, the plaintiff has the burden of proving that: (1) the property which caused the damage was in the "custody" of the defendant; (2) the property was defective because it had a condition that created an unreasonable risk of harm to persons on the premises (breach of the duty); and (3) that the defect in the property was a cause in fact of the resulting injury. In both negligent and strict liability cases, the reasonableness of the risk is determined by balancing the probability and magnitude of the risk against the utility of the thing. Hunt v. City Stores, Inc., 387 So.2d 585 (La.1980). Under either theory of liability, the court must determine if the risk which caused the injury is within the ambit of protection of the duty. Hessifer v. Southern Equipment, Inc., 416 So.2d 368 (La. App. 1st Cir.1982), writ denied, 420 So.2d 982 (La.1982); Entrevia v. Hood, 427 So.2d 1146 (La.1983).

GREER'S LIABILITY
The record fully supports the trial judge's findings of fact. The photographs taken twenty days after the accident (P-1 and P-2) show a stepping stone walkway leading from the welding shop across grass to a parking lot. Mr. Greer testified the round concrete stones were level and of equal size.
The only unusual features of this stepping stone path were (1) the method of setting the stones, and (2) the grass obscuring the slight height differential. Mr. Greer did not dig holes to set the stones. Instead he laid the stones on level ground, then spread sand and gravel around them for stability. After the sand and gravel had settled, he repeated the application. The stones protruded about one (1") inch above ground level.
*494 There is no proof that the stones themselves, nor the method by which they were set into the ground, were defective. We feel that none of the features of the stepping stone pathway that could have caused Mr. McCormick's injuries posed an unreasonable risk of harm to persons. The fact that Mr. McCormick fell does not elevate the condition of the walkway to that of an unreasonably dangerous vice or defect.
The unreasonable risk of harm criterion is not a simple rule of law which may be applied mechanically to the facts of the case. Entrevia v. Hood, supra at p. 1149. That there exists a case where a one to two (1-2") inch elevated uneven spot in a sidewalk, obscured by grass growing in the crack, created an unreasonable risk of harm and was thus defective, as in Fontenot v. Hanover Insurance Co., 378 So.2d 461 (La.App. 3rd Cir.1979), affirmed in part, reversed in part, and remanded, 385 So.2d 238 (La.1980), does not mean that every imperfection in a sidewalk falls mechanically into such a classification. The maintenance of a perfect stepping stone walkway would require, among other things, that the stones be exactly the same height and exactly the same width apart. With Louisiana's wet climate it would be impossible to keep a perfect walkway. Many minor defects are bound to exist.
In the present case the risk of harm would have been the obscured height differential of the stepping stones and/or the instability of the concrete stepping stones. This presented a risk of harm greater than would have been present had Mr. Greer set the stepping stones deeper into the ground. The stones protruded no more than one (1") inch above the ground, and the elevation provided a dry walkway to the welding shop. The trial court did not have to reach the risk-utility test. However, we find that this stepping stone path and its height of one (1") inch above the ground was a reasonable and necessary choice made by Mr. Greer.
The evidence indicates that the area was reasonably level and there is absolutely nothing to suggest that Mr. Greer was negligent in his maintenance of the premises. The testimony revealed he regularly mowed the grass over the stones.
After reviewing the evidence of the record, we cannot say that the trial judge's findings on the credibility of the witnesses or the facts of the case are clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Batiste v. Guiteau, 413 So.2d 559 (La.App. 1st Cir.1982), writ denied, 414 So.2d 776 (La.1982).
For the foregoing reasons, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.
NOTES
[*] Judge Ronald D. Cox of the Fifteenth Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court.