GUIDRY, Judge.
Plaintiff, Jack P. Showers, brought suit seeking damages allegedly resulting from a collision between his 1980 450 SL Mercedes Benz and Lorita B. Oscar’s 1980 Chevrolet Monte Carlo. The accident occurred on Pinhook Road in Lafayette, Louisiana, when Oscar swerved into the oncoming lane of traffic in which Showers was traveling to avoid hitting a vehicle driven by Kelly M. Loughlin, which had allegedly pulled into Oscar’s lane of traffic. Showers named Oscar, Loughlin[1], and Lough-lin’s insurer, Allstate Insurance Company, as defendants in the suit. Loughlin and Allstate filed a third party demand against St. Landry Motors & Body Shop, Inc. for alleged negligent repair and undue delay in *363 repairing Showers’ vehicle. Prior to trial, the third party demand of Loughlin and Allstate against St. Landry was dismissed on summary judgment. That judgment is now final. Loughlin and Allstate also filed a third party demand against Oscar.
A twelve member jury found that the accident occurred as a result of the sole negligence of Kelly Loughlin and awarded Showers judgment against Loughlin and Allstate for the following sums:
(a) Bodily injury $ 2,000
(b) Automobile Repairs 2,000
(c) Automobile depreciation 21,000
(d) Other damages 7,500
Total Damages $32,500
The third party demand of Loughlin and Allstate against Oscar was dismissed. Loughlin and Allstate were cast with all costs.
Loughlin and Allstate appeal urging the following assignments of error:
1. The jury failed to apply the law that improper repair cannot be attributable to a tort feasor.
2. The jury improperly applied the law to. the facts regarding the duty of Jack Showers to mitigate his damages.
3. The jury improperly found the defendants liable for the damages relating to repair, depreciation and loss of use, for the reasons mentioned above.
4. The jury improperly found Allstate Insurance Company liable for ‘negligent compromise’, when no such tort exists under Louisiana law.
5. The trial judge improperly allowed evidence of compromise before the jury as part of the evidence and in closing argument of plaintiff’s counsel.
Showers answered the appeal, asserting that the jury’s awards for personal injuries and other damages were inadequate. Neither party has questioned the jury’s determination of liability.
FACTS
The accident in question occurred on June 21, 1983 on Pinhook Road in Lafayette, Louisiana. At the accident site, Pin-hook Road, a four-lane highway, runs in a north-south direction. Showers was traveling south on Pinhook Road in the far right-hand lane of traffic. Lorita Oscar was in the left lane of traffic and Kelly Loughlin was in the right lane, both traveling north on Pinhook Road. According to the record, Loughlin attempted to move from the right lane to the left lane, apparently unaware of the Oscar vehicle located directly behind her in the left lane. When Oscar saw Loughlin’s vehicle veering into the path of her car, she turned to her left to avoid a collision. Oscar’s vehicle crossed over the center line into the path of Showers’ vehicle. The evidence reflects that Showers was unable to avoid the ultimate collision with the Oscar vehicle. Oscar’s car hit Showers’ car broadside. As a result of the collision, Showers suffered relatively minor injuries to his shoulder, left arm and fingers. His vehicle sustained substantial damage to the entire left side.
After the accident, Showers sent his Mercedes to St. Landry Motors & Body Shop, Inc. for repairs. Glen Leger, the owner of St. Landry Motors, prepared an estimate of the repairs needed and the cost thereof. Leger thereafter contacted Showers regarding the estimate and whether or not to proceed with the necessary repairs. Showers authorized the repair of the vehicle.
Prior to commencement of the repairs, Rich Hamilton, Allstate Insurance Company’s adjuster, went to St. Landry Motors and discussed the repair of Showers’ car with Leger. Leger showed Hamilton the estimate which had been prepared. After checking over the estimate, Hamilton and Leger had discussions about certain items on the estimate. Following these discussions, at Hamilton’s request, Leger changed various items on the estimate, reducing the original estimate by approximately $1,400.00.
Leger thereafter commenced repairs on the Mercedes and, after dismantling the vehicle, he realized that it had sustained certain “hidden damages” which could not be detected upon initial examination. After dismantling the vehicle, Leger discover *364 ed that the car’s floor pan had been damaged and needed to be replaced. At trial, Leger explained the significance of a floor pan in a Mercedes. Unlike most other cars, a Mercedes does not have a frame. Instead, the structure of the vehicle rests on the floor pan. Leger explained that “[a] floor pan is much like the cement slab on your house. If that’s not straight, the house will be crooked.”
After several unsuccessful attempts to contact Hamilton regarding the needed repair work, Leger called Showers to inform him of the additional problems with the car. Showers told Leger to repair the car as best as he could. Leger testified that he later discussed the problem with a representative of Allstate and was informed to try to repair the floor pan instead of replacing it with a new one. Hamilton testified that he did-not recall ever discussing the floor pan problem with Leger.
After three and a half months at St. Landry Motors, the repairs were completed. Upon receiving his car from the shop, Showers observed several problems with the car: a tear in the left front seat upholstery; a crack in the dashboard; the cassette player did not work; neither the soft nor the hard top would fit properly on the car; the car pulled to the left when driving it; the tires wore out rapidly; and, the car rattled and vibrated. Despite another attempt at repairs, during which the Mercedes stayed at St. Landry Motors for approximately five to six months, the vehicle could not be put back to its original condition. Showers testified that he bought the Mercedes in 1981 at a price of $40,000.00.
The opinions of experts in the field of appraisal and valuation of Mercedes Benz automobiles were introduced at the trial on the merits. James Paul Babin, the new car manager at Moss Motors in Lafayette, examined Showers’ Mercedes in May, 1985, two months prior to the trial. After a thorough examination and test drive of the vehicle, Babin opined that the car’s present wholesale value was between $10,000.00 to $12,000.00. Babin stated that a Mercedes of that same make and low mileage in good condition would wholesale at approximately $25,000.00. Babin attributed this depreciation in value to the fact that the car had obviously been wrecked and that in operation it vibrated from the front end.
Another expert, John Erny, also examined the Mercedes in May, 1985. Erny, the owner of Accent Leasing Company in Lafayette, testified that it was obvious that the car had been wrecked due to the condition of the trunk, the way the left door hung, and the way the top was attached to the body of the vehicle. Upon driving the vehicle, Erny found tht it rattled, pulled to one side, and actually leaned to one side. Erny determined that the wholesale value of a 1980 Mercedes in good condition would be worth between $22,000.00 to $25,000.00 at that time. In June of 1988, Erny approximated that the vehicle would have been worth $30,000.00 to $33,000.00. Erny stated that Showers’ Mercedes was “worthless” in its present condition, but that with extensive body work, it could bring close to retail value. Erny did not indicate how much it would cost to get the vehicle back into such condition where it could be sold.
Francis Marion Hooper was accepted by the court as an expert in automobile appraisals. Hooper testified that he examined the Mercedes four days prior to the trial and noted the following: it had a fishtailing effect when it hit bumps; it vibrated through the body of the car; there was some wear on the front tires; the left window did not work properly; and, the paint job was poor. Hooper opined that the retail value of the same car in good condition was from $25,000.00 to $28,000.00. Hooper testified that the car could be repaired at an estimated cost of $1,486.90, and at such time, there would be no depreciation to the value of the vehicle.
REPAIR OF THE MERCEDES
Appellants’ first three assignments of error are directed towards the jury’s award of property damage to Showers. Appellants contend that the serious problems which continue to plague Showers’ Mer *365 cedes is the result of faulty repairs performed by St. Landry Motors.
In support of its position, appellants cite the case of McDonald v. American Fire & Indemnity Ins. Co., 378 So.2d 1013 (La.App.2d Cir.1979), which stands for the proposition that a repair shop’s incompetence in repairing an automobile cannot be legally attributable to a defendant. The jury was properly instructed on this point prior to their deliberations. We agree with the legal principle enunciated in the McDonald case, however, we do not find that the jury erred when it presumably found that legal principle inapplicable in the instant case.
The record reflects that Allstate, through its adjuster, Rich Hamilton, elected to supervise and negotiate the repair of Showers’ Mercedes. Hamilton admitted that negotiations took place between himself and Leger concerning what repairs Hamilton felt were necessary. Hamilton did not consult with Showers, but instead dealt only with Leger. As a result of these negotiations, Leger made several alterations to his original estimate in conformance with the views expressed by Hamilton. Leger’s decision to attempt to repair the floor pan instead of replacing it was also the result of Allstate’s recommendations. The record reflects that the'major problems which the Mercedes still experiences are due to the failure of Leger to replace the damaged floor pan. Allstate cannot seek to be relieved from liability when its own agents were directly responsible for the failure of the repairer to replace the floor pan. Leger testified that the floor pan could have been replaced for a cost of approximately $1,000.00 to $1,200.00.
Appellants also claim that Showers failed to mitigate his damages in the instant case. We find no support for this argument in the record. Showers sent his automobile to St. Landry Motors within a week of the accident, authorizing Leger to repair the vehicle. As previously mentioned, Allstate thereafter assumed control over the repair work. There is no evidence to show that Showers was anything but diligent in seeking to have his vehicle properly repaired. Showers immediately returned the vehicle to St. Landry Motors after the first repair job on account of continued problems. This assignment is therefore without merit.
Based upon their argument of improper repair and the failure of Showers to mitigate his damages, appellants urge that the jury erred in holding them liable for the damages relative to repair, depreciation and loss of use. Suffice it to say that we find no manifest error in the jury’s awards of damages to Showers, as they are supported by the record. Davis v. Allstate Insurance Co., 476 So.2d 1111 (La.App.3rd Cir.1985), writ denied, 479 So.2d 361 (La.1985); Wiley v. Travelers Insurance Co., 300 So.2d 555 (La.App.3rd Cir.1974), writ denied, 303 So.2d 187 (La.1974).
EVIDENCE OF COMPROMISE/SETTLEMENT
Appellants’ final two assignments of error concern allegations that the trial court improperly allowed evidence of compromise between Allstate and Showers before the jury. Appellants contend in brief that, by allowing such evidence, the jury was given the impression that there was a “tort of negligent compromise”. We find no merit to this argument.
Appellants’ argument in this respect is based upon certain statements made by Showers on the witness stand and later referred to by Showers’ attorney during closing arguments. When questioned who he thought was taking care of the repairs on his Mercedes, Showers stated, “... all of my actions were strictly in reliance on Allstate’s taking care of the situation, taking care of the problem”. Showers also testified that he was assured by Allstate that his car would be properly repaired. These statements were admitted over the objections of appellants’ counsel. Appellants argue that such statements were improperly admitted in evidence and, as such, prejudiced the jury against them.
*366 We find no error in the trial court’s admission of the statements made by Showers. Such statements were relevant, not for the purpose of proving compromise negotiations between Showers and Allstate, but for the purpose of showing Allstate’s involvement in the repair of Showers’ vehicle. Such evidence was relevant to counter appellants’ arguments concerning responsibility for the alleged improper repair by St. Landry Motors and that Showers failed to mitigate his damages. Additionally, we note that any prejudicial effect on the jury was cured by the trial judge’s admonition in admitting the evidence that offers of settlement or compromise are inadmissible and are not to be considered by the jury in their deliberations.
ANSWER TO APPEAL
Plaintiff asserts in his answer to the appeal that the jury’s awards for personal injury and for “other damages” are inadequate.
In the review of an award of damages, the question is not whether a different award might have been more appropriate but whether the award of the trial court can reasonably be supported by the evidence and justifiable inferences from it. Augustine v. Dickenson, 406 So.2d 306 (La.App.3rd Cir.1981). On the basis of the record, we find the jury’s awards reasonable and not an abuse of discretion.
DECREE
For the above and foregoing reasons, the judgment of the trial court is affirmed. Appellants are assessed with all costs of this appeal.
AFFIRMED.

. At the time of trial, Kelly M. Loughlin had married and was thus referred to at trial and in the judgment as Kelly M. Loughlin Stelly.