532 So.2d 292 (1988)
John L. GARDNER, Jr., Plaintiff-Appellant,
v.
Kenneth W. CAMPBELL, et al., Defendants-Appellees.
No. 87-743.
Court of Appeal of Louisiana, Third Circuit.
October 5, 1988.
Writ Denied December 9, 1988.
*293 Robert L. Dow, Scofield, Bergstedt, Gerard, Mount & Vernon, Rudie R. Soileau, Lake Charles, for plaintiff-appellant.
Barnett, Pitre, Davis & Yoes, Clayton Davis, Lake Charles, for defendants-appellees.
Before GUIDRY, FORET and STOKER, JJ.
GUIDRY, Judge.
This is an action for damages for personal injuries suffered by plaintiff, John L. Gardner, Jr., in a fall at the Annex Mini-Storage in Lake Charles, Louisiana, in September 1984. Named as defendants in the suit were Kenneth W. Campbell and George K. Parkman, co-owners of the facility, and Unigard Mutual Insurance Company, their insurer (hereafter collectively referred to as "defendants").
The case was tried to a twelve person jury which returned a verdict finding defendants to be 52% at fault and plaintiff *294 48% at fault. The jury determined plaintiff's total damages to be $220,000.00. In accordance with the verdict, judgment was rendered in favor of plaintiff and against defendants, in solido, for $114,400.00 plus interest and costs.
Plaintiff appeals alleging that the jury erred in finding him partially at fault and in awarding an insufficient amount of damages. Further, plaintiff urges that the trial court erred when it excluded evidence of the condition of the drains at the Mini-Storage other than the one involved in plaintiff's accident. Defendants answered the appeal arguing that the jury erred in both finding them negligent and strictly liable, i.e., in finding the drain defective and unreasonably dangerous, and in awarding plaintiff excessive damages. Defendants also argue that the trial judge erred in denying their motion in limine seeking to exclude evidence of the condition of other drains at the Annex Mini-Storage.
FACTS
On September 16, 1984, Darlene Mills called her brother, John Gardner, to seek his help in moving into storage the personal belongings of Bonnie Parker, a mutual friend. The assistance of Robert Boyd, John's nephew, was also enlisted. Bonnie Parker had previously rented a small storage unit at the Annex Mini-Storage located at 2215 Common Street, in Lake Charles, Louisiana, in which she had stored a washer, a dryer, and several boxes of personal belongings. As the result of the recent death of her father and other developments, she had additional items to be stored, and consequently, she rented a new and larger unit at the facility.
The four met and proceeded, in John's pickup truck, to an apartment where the additional items to be stored were located. These were loaded into the truck and transported to Annex Mini-Storage Unit # 263, where they were unloaded. The smaller unit, # 397, whose contents had to be transferred to Unit # 263 was located within the building across the alleyway from the new, larger unit, but near the opposite end.
While Robert Boyd, Darlene Mills and Bonnie Parker walked down the alleyway between the buildings, the plaintiff backed his truck down the alley to a point approximately even with the doorway leading to the interior hallway on which Unit #397 was located. Unit # 397 was no more than five feet wide by ten feet deep with a three foot wide doorway leading into a five foot wide hall. These narrow constraints combined with the shape and weight of the dryer (about three feet wide and 70 pounds) necessitated that Robert and John pick up the dryer while facing each other. Robert then walked facing forward while John had to back out of the building.
After clearing the building, Gardner continued walking backwards toward his truck which was situated in the middle of the twenty-one foot wide alley between the storage buildings. As plaintiff, walking backwards, neared the rear of his truck he stepped on the raveled edge of asphalt surrounding a drain in the alleyway. The drain had become recessed from the road surface to a depth of some two to three inches when the original alleyway was overlaid during an expansion project at the facility. When Gardner backed into this drop-off, he lost his balance and fell backward. The dryer fell on him. The full force of the impact was taken by plaintiff's right wrist and hand.
Following the fall, there was an immediate onset of severe pain which prevented plaintiff from continuing to help with the moving. Since Gardner, unemployed at the time and receiving unemployment compensation, was fearful of losing those benefits, he delayed seeking medical attention for approximately one month. Finally, on October 19, 1984, because of persistant pain and limitation of motion, Gardner went to the emergency room of Moss Regional Hospital in Lake Charles. When plaintiff's wrist failed to respond to the conservative treatment prescribed by the doctor at Moss, he was referred to the University Medical Center in Lafayette, Louisiana.
At University Medical Center (U.M.C.), Gardner was treated by Drs. Charles Roth and Alvaro Hernandez, who diagnosed *295 plaintiff as suffering from a scaphoid-lunate disassociation. The failure of his condition to respond to treatment finally required surgical intervention. On December 11, 1984, the disassociation was surgically reduced by pinning the two bones together. Subsequently, Gardner's condition was followed by Dr. Raymond Fletcher (also at U.M.C.) who discharged plaintiff in November 1985 as having reached maximum recovery. Dr. Fletcher was of the opinion that Gardner has a 15% disability of his right arm. The doctor opined that plaintiff could return to his former occupation as a pipefitter but that: (1) he would not be able to perform to 100% of the ability he had before his accident; and, (2) the continued stress produced on his wrist by his occupation would accelerate the arthritic changes in the wrist one would normally expect following plaintiff's surgery.
In January 1986, Gardner consulted Dr. Norman Paul Morin of Lake Charles, an orthopedist. Dr. Morin, after reviewing Gardner's medical records and after examining the patient, assigned plaintiff a disability rating of 25% of the wrist or 8% of the right arm. Dr. Morin agreed with Dr. Fletcher's assessment that appellant could return to his former occupation, but that to do so would exacerbate any pain or arthritic changes Gardner was experiencing. Both Dr. Morin and Dr. Fletcher were also in agreement that Gardner would be better off finding a less physically demanding occupation.
As a pipefitter, plaintiff had earned as much as $20.98 per hour. However, this was at the height of the oil/petro-chemical boom. A representative of the Plumbers and Steamfitters Union, William V. Johnson, testified that the current prevailing wage for journeymen pipefitters did not exceed $15.46 per hour in total benefits and in many instances "sweetheart" deals had been entered into with companies for as little as $12.60 per hour "packages". Johnson further testified that the current employment picture for pipefitters was not bright, with only 200 to 500 jobs available for the more than 1200 members of the union. Additionally, Johnson verified that plaintiff had neither worked nor paid his union dues since May of 1984, some four months prior to his accident; and, in November of 1984, he had been expelled from the union for non-payment of dues.
Dr. Jan Duggar, an economist, testifying on behalf of plaintiff calculated that over the work life expectancy of Gardner he would lose $233,407.00 present day dollars if he had to take a job at $4.50 per hour rather than a pipefitter's job at $15.46 per hour. He also estimated that from the time of his accident up to the day of trial, plaintiff had lost $60,882.00 in wages.

OPINION
We first address the question of the defendants' motion in limine to exclude evidence of the condition of other drains located on the premises and plaintiff's contention that the trial court erred when it refused to admit evidence of the condition of other drains on the premises.
It is well settled that generally, questions of the admissibility, the relevance and the weight of evidence are properly resolved at trial on the merits, not by pretrial motions. State v. Tanner, 457 So.2d 1172 (La.1984). Therefore, we find no clear error in the trial court's refusal to grant defendants' motion in limine.
The accident in question took place at one particular point in the complex and involved one particular drain on the premises. Hence, the condition of the other drains was, at most, of questionable value in determining the merits of the case. Whether evidence is relevant and should be admitted or irrelevant and should be properly excluded is left to the discretion of the trial judge and his ruling will not be disturbed absent the finding of a clear abuse of that discretion. Citizens Bank and Trust Company v. Consolidated Terminal Warehouse, Inc., 460 So.2d 663 (La. App. 1st Cir.1984). We find no clear abuse of discretion in the trial court's ruling.
We next turn our attention to the findings by the jury that (1) the drain in question was defective, i.e, that defendants were strictly liable; (2) defendants were *296 negligent in maintaining the premises at Annex Mini-Storage; and, (3) defendants' negligence was a cause-in-fact of plaintiff's accident.
"The owner of immovable property has a duty to keep his property in a reasonably safe condition. He must discover any unreasonably dangerous conditions on his premises and either correct the condition or warn potential victims of its existence. Boutte v. Pennsylvania Millers Mutual Insurance Company, 386 So.2d 700, 701 (La.App. 3d Cir.1980); Albritton v. J.C. Penney Company, Inc., 385 So.2d 549, 552 (La.App. 3rd Cir.), writ denied, 393 So.2d 727 (La.1980). This duty is the same under the strict liability theory of La.C.C. art. 2317 as under the negligent liability theory of La.C.C. arts. 2315-16. Shipp, [v. City of Alexandria] 395 So.2d [727] at 728 [(1981) ]; Shelton v. Aetna Casualty & Surety Company, 334 So.2d 406, 410 (La.1976). The difference in proof between these theories of liability is that under La.C.C. art. 2315, it must be shown that the owner either knew or should have known of the risk, whereas under La.C.C. art 2317, a plaintiff is relieved of proving the defendant's knowledge. Kent v. Gulf States Utilities Company, 418 So.2d 493, 497 (La.1982); Buchanan v. Tangipahoa Parish Police Jury, 426 So.2d 720 (La.App. 1st Cir. 1983).
Under either theory of liability, the plaintiff has the burden of proving that (1) the property which caused the damage was in the "custody" of the defendant; (2) the property was defective because it had a condition that created an unreasonable risk of harm to persons on the premises (breach of the duty); and (3) that the defect in the property was a cause in fact of the resulting injury. McCormick v. Insured Lloyds Insurance Company, 488 So.2d 491, 493 (La. App. 3d Cir.1986); See also Kent, 418 So.2d at 501 (Dennis, J. concurring)." Savic v. Assurance Company of America, 509 So.2d 460 (La.App. 3rd Cir.1987).
The evidence introduced and the testimony elicited at trial established that when defendants purchased the Annex Mini-Storage, it was made up of four long storage buildings with paved roadways allowing access to each side of each building. Subsequently, defendants added a fifth building (the building which contained the small storage unit which plaintiff was helping to clear) and in the process of building the addition, an asphalt overlay was placed over the alleyway in which the accident occurred. That overlay resulted in there being a two to three inch drop-off from the new road surface to the level of the drain. The drain was not marked and the asphalt at the edge of the drain was raveled. Plaintiff fell when he encountered the raveled edge of the drop-off while walking backwards carrying a clothes dryer.
By the very nature of defendants' business, one would expect heavily burdened clients to be moving in and out of the storage units and walking in the aisles and alleyways. Considering the foregoing and the standard of appellate review enunciated by this court in Fontenot v. Shelter Mutual Insurance Company, 499 So.2d 997 (La. App. 3rd Cir.1986), to wit:
"Where there is evidence before the trier of fact which furnishes a reasonable factual basis for the trial court's conclusion, the appellate court should not disturb this factual finding in the absence of manifest error. Canter v. Koehring Company, 283 So.2d 716 (La.1973)...."
We conclude that the jury did not clearly err when it found defendants responsible for plaintiff's injury under both the strict liability theory of La.C.C. art. 2317 and the negligent liability theory of La.C.C. arts. 2315 and 2316.
Likewise, we find no clear error in the jury's determination that plaintiff was guilty of contributory fault.
A landowner is not the guarantor of the safety of pedestrians on his premises. In Rasmussen v. State Farm Fire and Casualty Company, 509 So.2d 712 (La.App. 3rd Cir.1987), a panel of this court stated:
"Whether a tort claim for damages is tested under traditional negligence concepts or strict liability under La.C.C. art. *297 2317, the initial inquiry is whether defendant's conduct or inaction posed an unreasonable risk of injury to others. Entrevia v. Hood, 427 So.2d 1146 (La. 1983); Pitre v. Aetna Life and Cas. Co., 434 So.2d 191 (La.App. 3 Cir.1983), writ granted, 440 So.2d 754 (La.1983), rev'd on other grounds, 456 So.2d 626 (La. 1984). To determine whether a risk is unreasonable, the court must balance the probability and the gravity of the harm posed against the utility of the thing and the individual and societal rights and obligations involved.
It is well settled in Louisiana that a landowner is not liable for an injury which results from a condition which should have been observed by an individual in the exercise of reasonable care or which was as obvious to a visitor as to the landowner. Shelton v. Aetna Casualty & Surety Company, 334 So.2d 406 (La.1976); Guillory v. Audubon Ins. Co., 417 So.2d 892 (La.App. 3 Cir.1982).
A pedestrian is not required to look for hidden dangers, but he is bound to observe his course and to see if his pathway is clear. A pedestrian is held to have seen those obstructions in his pathway which would be discovered by a reasonably prudent person exercising ordinary care under the circumstances. Campbell v. Tidwell, 407 So.2d 1359 (La. App. 3 Cir.1981)."
Plaintiff could have turned sideways after clearing the door and looked where he was going. Had he done so, it is very likely he would have seen the drain, which was in plain view, and could have taken measures to avoid his fall.
In Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La.1985), the Louisiana Supreme Court, commenting on allocation of fault, stated:
"In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties."
Clearly, the cause of the accident in question was plaintiff stepping in or on the edge of the drop off to the drain. Evidently, the jury, in assessing percentage of fault, felt that he had almost as much a duty to observe where he was going as defendants had to provide an unimpeded pathway for the use of its clients. We find no clear error in the jury's assessment of the parties respective percentages of fault.
Both plaintiff and defendants question the quantum of the jury award of $220,000.00. It is well settled that a determination of the magnitude of damages will not be disturbed on appeal unless the reviewing court is convinced the trier of fact abused its much discretion in making the award, and then the award may only be raised (lowered) to the lowest (highest) point which is reasonably within the discretion of the trier of fact. Scott v. Hospital Service District No. 1 of the Parish of St. Charles, 496 So.2d 270 (La.1986), and cases cited therein. The question which an appellate court must answer is not whether a different award might have been more appropriate but whether there was evidence before the trier of fact which, upon its reasonable evaluation, supports the award. Showers v. Loughlin, 497 So.2d 361 (La. App. 3rd Cir.1986); Chatelain v. United States Fidelity and Guaranty Co., 495 So.2d 379 (La.App. 3rd Cir.1986), writ denied, 498 So.2d 756 (La.1986).
The jury did not itemize or furnish a breakdown of its award of damages. While we are not privy to the jury's rationale in reaching its award, we note that plaintiff had not worked for at least four months prior to his accident; he never sought any work after his accident; and, *298 although he may have been physically able to return to his chosen occupation for some undetermined period of time, it was almost a medical certainty that he would not be able to pursue that profession until the end of his natural work life.
Accordingly, considering these factors and the particular injury which plaintiff suffered, we find sufficient evidence before the jury to justify its award and no abuse of the jury's much discretion in the amount of damages awarded.
Accordingly, for the reasons stated, the judgment of the trial court is affirmed. Costs of this appeal are assessed one-half (½) to appellant and one-half (½) to appellees.
AFFIRMED.