DOUCET, Judge.
This lawsuit arises out of personal injuries and losses allegedly sustained as a result of an automobile accident that occurred on April 3, 1984 on Louisiana Highway 29 in Avoyelles Parish, Louisiana. The accident involved an automobile driven by Bruce Bonnette in which his parents, Rita and Haven Bonnette were guest passengers. Also involved in the accident was an F-800 truck driven by Louis J. Dufour, Jr. while in the course and scope of employment with Chloride, Inc. Mr. Dufour’s helper, Gene Lacarte, was a passenger in the truck at the time of the accident.
The aforementioned accident occurred at approximately 8:45 A.M. about five miles south of Bunkie, La. Allegedly, Mr. Duf-our was following a brown Pontiac when it suddenly came to a stop in his immediate lane of travel. Mr. Dufour also contends that in order to avoid hitting the rear end of the Pontiac, he performed an evasive maneuver that forced him into the on-coming lane of travel of the Bonnette vehicle. The two vehicles collided and the Pontiac allegedly immediately left the scene of the accident.
Injured in the Bonnette vehicle were Rita, Haven, and Bruce Bonnette. The two occupants of the Dufour vehicle received only minor injuries.
Immediately after the accident, Mr. Bon-nette was removed from his vehicle and transported to Bunkie General Hospital. At Bunkie General, it was revealed that Mr. Bonnette had a fracture to his right rib, a hairline fracture of his left kneecap and a severely comminuted patella. Mr. Bonnette was thereafter transported to the Veterans Administration Hospital in Pine-ville, La. where surgery was performed on his right knee. During surgery, four pins were placed in Mr. Bonnette’s knee in order to aid the healing process. The pins were subsequently removed on an outpatient basis in a second surgery. Shortly thereafter, Mr. Bonnette sporadically underwent physical therapy on his right knee.
In 1985, Mr. Bonnette was seen by three other physicians: Dr. Marvin Clifton, a neurosurgeon, Dr. Applebaum, a neurosurgeon, and Dr. Kingsley, an orthopedic specialist.
A lawsuit was subsequently filed on behalf of Rita and Haven Bonnette and their other children in the Twelfth Judicial District Court for Avoyelles Parish. Separate lawsuits were filed on behalf of Bruce Bon-nette, his wife, Sherrie, and their three *730 children, also in the Twelfth Judicial District Court for Avoyelles Parish.[1] Each of the lawsuits named Aetna Life and Casualty Insurance Company, Integrity Insurance Company, Chloride, Inc., and Louis J. Duf-our, Jr. as defendants. The matters were subsequently consolidated for trial and the claims of Rita and Haven Bonnette were resolved in the course of the proceedings.
The consolidated claims of Bruce and Sherrie Bonnette and their childreñ, Jason, Melissa and Jody Bonnette, were tried before a jury of twelve members over a period of four days. After due deliberations, the jury returned a verdict in favor of Bruce Bonnette in the total sum of $20,000, together with legal interest and court costs. The jury rejected the claims for loss of consortium presented on behalf of Sherrie Bonnette, individually, and Bruce and Sherrie Bonnette on behalf of their minor children. The verdict of the jury was unanimous and was dated and signed on November 9, 1985. On November 15, 1985, a judgment was signed and filed in accordance with the verdict of the jury.
On November 26, 1985, a Motion for New Trial for damages was filed on behalf of plaintiffs. The court denied the plaintiffs’ Motion for New Trial by judgment rendered and signed on December 20, 1985. This devolutive appeal was thereafter filed for plaintiffs, Bruce and Sherrie Bonnette, individually, and Bruce and Sherrie Bon-nette on behalf of their minor children.
The sole issue now on appeal is whether the jury’s award for damages was reasonable and proper as considered in light of the testimony and evidence placed before the jury. Plaintiffs contend that the jury’s award for damages was manifestly erroneous. We agree.
Mr. Bonnette bases the above contention on several factors, the first being that he is entitled to past, present and future medical expenses. While we agree with plaintiff that a person who is injured is entitled to recover all damages, past, present and future, these expenses are only recoverable if the expenses arise in connection with injuries sustained in the accident. Reck v. Stevens, 373 So.2d 498 (La.1979).
At the commencement of the trial, it was stipulated to that there were $9,490.00 in past medical expenses. Defendants agreed that $7,294.00 of those expenses arose from injuries arising out of the accident. Defendants denied that the other $2,196.00 of medical expenses incurred in connection with Mr. Bonnette’s back condition were expenses attributable to the accident. Thus, with respect to the amounts of past medical expenses owed by defendants, the sole issue which arises is whether the $2,196.00 incurred is attributed to or connected with the accident. We find that it is not.
Dr. Daniel Kingsley (an orthopedic surgeon) and Dr. Robert Applebaum (a neurosurgeon) each testified that Mr. Bonnette had a pre-existing congenital back condition that, in their respective opinions, was not aggravated by the automobile accident. Additionally, they agreed that the condition of plaintiff’s back was not such that it was disabling. Furthermore, plaintiff’s own treating physician, Dr. Vanda L. Davidson, opined that the accident did not cause any aggravation of Mr. Bonnette’s pre-existing congenital back condition. Dr. Davidson added that he based his findings in part on the fact that plaintiff’s first complaints of back discomfort were recorded approximately one year or more after the date of the accident.
Thus, as can be determined from the above testimony, there is considerable evidence which indicates that plaintiff’s back condition was not caused or aggravated by the accident in question. Whether or not the expenses incurred as a result of plaintiff's alleged back injuries were to be awarded was ultimately left up to the jury. The jury may or may not have included this amount when making their determination of how much money to award. In light of the evidence presented at trial, we find that *731 the jury was free to exclude such amount when making its final determination of how much to award plaintiff.
Plaintiff also claims that the jury should have included in its award, an amount for future medical expenses. Plaintiff supports this contention by claiming that the evidence set forth at trial overwhelmingly established that he would incur future medical expenses. With this contention, we do not agree.
The issues of future medical treatment and expenses were contested and controverted. The evidence and common sense supports the likelihood that plaintiff will have problems from arthritis. However, the possibility for future surgery for the knee drew differing opinions from Dr. Daniel Kingsley and Dr. Vanda Davidson. The same is true regarding the alleged need for future medication to treat arthritis in his right knee. As such, it is clear that the evidence set forth at trial did not overwhelmingly establish that plaintiff would incur future medical expenses. Consequently, we find that if the jury chose to exclude such amount when making its determination of how much money to award plaintiff, it was entirely within its discretion.
Plaintiff also asserts that he was unable to work due to injuries he received in the accident and that he is therefore entitled to past loss of wages. Plaintiff supports the above contention by claiming that he had employment secured at the time of the accident. Plaintiff further contends that Mr. E.M. Michelle, an employee of the City of Marksville, had secured this job for him. Mr. Michelle however, stated at trial that the job was not secured. Mr. Michelle added that there was “nothing positive” insofar as promised employment to Mr. Bonnette was concerned. Mr. Michelle also testified that even if plaintiff would have gotten the job, the project would only last four to six months. After the project was over, Mr. Bonnette would have no guarantee of continued employment and, as a matter of practice, unless the worker shows exceptional ability, they are normally released at the end of the project.
Thus, in light of the above evidence, we hold that if the jury excluded such amount when making its determination of how much money to award plaintiff, it was entirely proper.
Additionally, plaintiff contends that he had skills as a construction carpenter before the accident occurred and, as a result of the injuries sustained from the accident, he would never again be able to engage in that type of work. Plaintiff therefore contends that the jury should have included in their award, the amount constituting future loss of income. We disagree.
It was established at trial that there are several types of jobs available to plaintiff that fit within the restrictions set out by his physicians. While plaintiff is restricted in his activity, all doctors testified that he is not disabled. Given the host of jobs available, plaintiff, if he has the desire to work, should be able to find employment that fits within his limitations.
Plaintiff asserts that he may be able to find employment, but the types of jobs that are available to him will not pay nearly the amount what carpenters have the ability to earn. Plaintiff contends that carpenters have the ability to earn $13.50 per hour. Plaintiff argues therefore, that he has lost the difference between what he could have earned had the injury not occurred and what he is now capable of earning (minimum wage or a small amount over). We disagree.
The record reflects that plaintiff, with the exception of a brief period of time, had not been employed for approximately two and one-half years prior to the date of the accident. The record also reflects that the highest income plaintiff has ever earned in his work life was $6.50 per hour and that this amount was only made for a brief period of eight months. Thus, it is evident that plaintiffs loss of future income is not what he contends it to be.
Furthermore, this court is of the opinion that in order for one to be able to earn the amount that plaintiff claims to have been *732 capable of making before he was injured, one has to be willing to work. Plaintiff has not indicated his willingness to seek employment. This is evidenced by the fact that plaintiff failed to show up on two occasions for vocational rehabilitation testing. Dr. Hearn, on both occasions, was ready and willing to help plaintiff determine what type of employment options were open to him. Plaintiff claims that he did not attend the sessions because he was without transportation. We find, however, that had plaintiff truly wanted to attend the sessions, he could have found a way to get there by friends or family members, or other means.
Also indicative of plaintiff's disinterest in obtaining employment is the fact that he did not do everything in his power to minimize his injuries. It was testified at trial by Dr. Hearn that there is a direct correlation between those who do not want to minimize their injuries and those who are poorly motivated to work. It was established at trial that plaintiff, against direct orders of his physician, missed the majority of his prescribed therapy sessions. Plaintiff claims that he could not find transportation to the sessions. Again, we are of the opinion that plaintiff would have gotten to the therapy sessions by friends, family or other means had he truly desired to minimize his injuries. Thus, considering plaintiff’s past wage history, his disinterest in vocational and physical rehabilitation and the fact that plaintiff had not worked steadily for two and one-half years prior to the accident, it was in the jury’s discretion to not award future lost wages.
Plaintiff next asserts that he is entitled to damages for loss of consortium. We disagree.
Plaintiff testified that his family’s standard of living has not declined from what it was prior to the accident and that the relationship with his family has not greatly changed. Furthermore, after reviewing the record, we find that there was no convincing evidence established at trial of a loss of this type. Thus, we find that it was within the jury’s discretion to deny such an award.
Finally, plaintiff also claims that he has suffered much pain as a result of the injuries he received to his back and knee. As such, plaintiff claims that he was not adequately compensated for his physical pain and suffering. We agree.
The jury awarded the plaintiff a lump sum of $20,000.00. The verdict sheet given to the jury was unitemized with respect to each element of plaintiff’s damages.
The defendants stipulated that $7,294 of the plaintiff’s past medical expenses were related to the accident. We found that the remaining $2,196 of medical expenses were not related to the accident. We also found that the record did not support an award for past or future lost wages or for future medical costs. The only element of damages left to consider is the general damage award for plaintiff’s pain and suffering. If we subtract the $7,294 for past medical expenses from the $20,000 award, we arrive at the sum of $12,706. Even assuming that the jury meant that entire amount to be compensation for plaintiff’s pain and suffering, we find the sum awarded to be so low in light of the circumstances of this plaintiff and his injury as to constitute an abuse of discretion.
Following the accident, Mr. Bonnette was taken to Bunkie General Hospital. X-rays showed that Mr. Bonnette’s right kneecap was crushed. During surgery upon Mr. Bonnette’s right kneecap, it was discovered that the kneecap had been fractured into twenty pieces. Part of his kneecap was removed and four pins were inserted into the kneecap. The incisions in the knee were left open for three days. On the fourth day, the incisions were closed and a cast was placed on Mr. Bonnette’s leg from the hip joint to the ankle. Mr. Bonnette had to use a wheelchair and crutches to get around. When the cast was removed, his leg was fitted with a brace and physical therapy was prescribed. Mr. Bonnette remained in the hospital for six weeks.
Sometime after the pins were inserted, Mr. Bonnette saw Dr. Vanda Davidson who discovered by X-ray that one of the pins was penetrating through the underside of *733 the kneecap and causing damage to the knee. Dr. Davidson suggested surgical removal of the pin and surgery was scheduled for August 1, 1984. Before the surgery, one of the pins in Mr. Bonnette’s knee worked its way out of the knee, piercing the skin. Surgery was later performed and the other three pins were removed at that time.
Mr. Bonnette testified that at the time of the accident, he was in severe pain. He received no pain medication until several hours after the accident. During recovery, Mr. Bonnette was prescribed medication for the pain by Dr. Davidson and Dr. Clifton for approximately eight months after the first surgery. After the second surgery to remove the pins, Mr. Bonnette testified that his knee was very sore and painful.
The plaintiff testified that there has not been a day since the accident during which his knee has not been in pain. He continues to have stiffness, aching and swelling in the knee. With the probability that arthritis will develop, it is highly unlikely that he will ever be entirely free from pain.
The plaintiff testified that he used to hunt squirrel and rabbit but can no longer do so since he cannot walk the long distances over uneven terrain like he used to. He can no longer go dancing or plant his garden like he used to.
We feel that an award of $12,000 to compensate for the type of pain and duration of pain that the plaintiff has endured and will endure in the future is entirely inadequate. The jury abused its discretion in making such a low award. Having found error in the jury’s award of damages, we may now raise the award to the minimum sum within the reasonable discretion of the jury.
Factors to be considered in assessing quantum for pain and suffering are the severity and duration thereof. Deville v. Calcasieu Parish Gravity Drainage District #5, 422 So.2d 631 (La.App. 3rd Cir.1982) and cases cited therein. Considering the severity of the pain that plaintiff has suffered and will continue to suffer, and the probability that he will develop arthritis, we find that the jury, in the exercise of reasonable discretion, could not have awarded an amount less than $50,000.00.
We note that the original judgment of $20,000 has already been paid in full. Therefore, we award $30,000 additional general damages.
For the foregoing reasons, the trial court’s judgment is amended and increased to the sum of $50,000 with legal interest thereon from the date of judicial demand until paid. Costs of this appeal to be paid by appellees.
AFFIRMED AS AMENDED.

. A separate judgment in the consolidated appeal Bruce Bonnette, et al. v. Aetna Life & Casualty Insurance Company, et al., 503 So.2d 733 (La.App. 3rd Cir.1987) is being handed down this date.