509 So.2d 557 (1987)
Pamela D. BROWN, Plaintiff-Appellant,
v.
The GREAT ATLANTIC & PACIFIC TEA CO., INC., Defendant-Appellee.
No. 86-376.
Court of Appeal of Louisiana, Third Circuit.
April 8, 1987.
Rivers and Beck, Larry W. Rivers, Alexandria, for plaintiff-appellant.
McLure and Pickels, John C. Pickels, Alexandria, for defendant-appellee.
*558 Before LABORDE, YELVERTON, JJ., and CULPEPPER, J. Pro Tem.[*]
WILLIAM A. CULPEPPER, Judge, Retired, Pro Tem.
The principal issue presented by this appeal is whether the jury was proper in awarding plaintiff $1,500.00 in damages and reducing by 50% the amount of the award due to plaintiff's comparative negligence in a slip and fall accident in which plaintiff allegedly sustained damages.
On May 29, 1983 at about 7:00 A.M. store manager Felton Richard opened the A & P grocery store on MacArthur Drive in Alexandria, Louisiana by unlocking the front doors at the beginning of the business day. He proceeded into the store, followed by plaintiff, Pamela D. Brown, and her boyfriend who had been waiting for the store to open. As plaintiff proceeded down the aisles of the store, obtaining items for a picnic outing/auto race near Baton Rouge, she slipped and fell in a puddle of clear, non-sticky substance on the tile floor of the supermarket. It is uncontested on appeal that the substance was water left standing by A & P employees who mopped the tile floor the night before. Plaintiff fell and landed on her right elbow and right hip which resulted in an abrasion of her right elbow. Plaintiff, at the time being mostly embarrassed and believing that she was otherwise unhurt, finished her shopping and continued on her outing to the races. Later that afternoon, however, plaintiff began to feel "stiff all over" and, more particularly, began to feel a tightening in her neck and a pain in her back.
The day after the accident plaintiff saw Dr. Rud, a chiropractor whom plaintiff had seen for various reasons since 1975. Plaintiff received chiropractic treatment for her complaints of right shoulder, neck pain and thoracic or mid-dorsal pain. Plaintiff also returned to Dr. Rud on June 6, 1983, one week after the accident, and received chiropractic treatments for neck pains. Plaintiff did not return to Dr. Rud until September 1985 for a dislocation of her right thumb.
Plaintiff also began seeing Dr. Ray Beurlot, an orthopaedic surgeon, on June 13, 1983 when an examination revealed a 5% limitation when turning her head to the right, which was diagnosed as a sustained strain of the cervical spine. Dr. Beurlot also diagnosed that plaintiff suffered a strain of the thoracic or mid-back area based on plaintiff's complaints of back pain. Plaintiff was allowed to continue taking Percodan, which she had been prescribed for a tubal ligation operation 1 ½ months prior to the slip and fall accident and plaintiff was prescribed an anti-inflammant, range of motion exercises and applied heat in the form of hot towels. Plaintiff's next visit was June 27, 1983, at which time plaintiff complained of mostly neck discomfort, was prescribed a muscle relaxer and analgesic and asked to continue heat and exercises. After plaintiff's next visit on July 5, 1983 she began physical therapy.
Plaintiff saw physical therapist Mr. Eugene Noel, Jr. several times during July and August 1983 but only came in intermittently for physical therapy thereafter. She resumed physical therapy on a more regular basis in June 1984 when she was involved in an auto accident and was diagnosed as having a cervical and lumbosacral injury based on her complaints of pain and discomfort in her neck, shoulders and lower back. By October 17, 1984, however, plaintiff's lower back problems had subsided and plaintiff was complaining of pains similar to and located in the same area of pains experienced after the May 29, 1983 slip and fall accident but prior to the June 1984 auto accident.
Plaintiff also sought other medical help and underwent various procedures in an attempt to have her physical complaints diagnosed and treated. Plaintiff underwent two CT scans in October 1983, and a myelogram in November 1984, all of which were negative, thus ruling out the possibility of nerve root impingement or herniated disc. Plaintiff was also prescribed an ultrasound/electrical stimulator by Mr. Noel, her physical therapist. While in the hospital *559 for her myelogram, plaintiff underwent a psychiatric examination by Dr. W. Goodwin, the results of which showed that the patient had no serious mental defects. Plaintiff was also examined by neurologist Drs. Cooper and Patton and by orthopaedic physician Dr. T.E. Banks. The diagnoses of plaintiff's examining physicians are generally in agreement in finding that plaintiff sustained a strain of her cervical spine and thoracic spine as a result of the May 27, 1983 slip and fall accident and that, based on plaintiff's continuing complaints of pain, plaintiff suffers from a chronic cervical strain. Dr. Beurlot, plaintiff's treating physician, also felt that plaintiff suffered from chronic thoracic strain, however, he considered plaintiff's cervical and thoracic strains as "mild." Evidence at trial, however, revealed that plaintiff experienced episodes of thoracic and cervical pain prior to the May 29, 1983 slip and fall accident.
Plaintiff sued The Great Atlantic & Pacific Tea Co., Inc. (hereinafter A & P), the owners of the grocery store in which she slipped and fell, for her injuries resulting from the accident. A trial was held on November 5 and 6, 1985, at the commencement of which plaintiff's counsel objected to the non-appearance of 57 persons whose names appeared on the list of jurors to be called. The trial judge allowed the objection entered upon the record. At the conclusion of the trial the jury determined that as a result of the May 29, 1983 slip and fall plaintiff had suffered $1,500.00 in damages. The jury also found plaintiff 50% contributorily negligent, effectively reducing plaintiff's recovery by one-half. Defendant, A & P, filed a motion to allocate court costs which was argued on December 23, 1985, at the conclusion of which the trial court allocated all court costs to defendant. Judgment was signed on January 13, 1986 reflecting the award of the jury and the allocation of all court costs to defendant. From this judgment plaintiff appeals. Defendant, A & P, answers the appeal asking that this court reduce the award reflected by the trial court judgment and asking that the court costs be assessed equally between plaintiff and defendant in proportion to each party's percentage of fault.

EXCUSAL OF MEMBERS OF JURY VENIRE
Plaintiff contends as its first assignment of error the action of the trial court in excusing, outside of the presence of the parties, approximately 57 members of the jury venire.
Central to the idea of the use of juries as instruments of public justice is that a jury should be drawn from a fair cross-section of the community. Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). Pursuant to this idea our state Constitution, statutes and Supreme Court rules provide for qualifications for and exemptions and excusals of jurors. LSA-Const. of 1974, Art. 5 § 33; LSA-R.S. 13:3044; LSA-C.C.P. art. 1767; Louisiana Supreme Court Rules XXV and XXVI.
A trial judge is afforded a reasonable exercise of discretion in excusing members of the jury venire prior to trial and exercise of this discretion will not be disturbed unless a clear abuse thereof is found, or there is a showing of fraud or collusion resulting in prejudice. State v. Jugger, 217 La. 687, 47 So.2d 46 (1950). Here the record is devoid of evidence indicating that the trial court abused its discretion in excusing prospective jurors.
Plaintiff contends that the trial court abused its discretion in excusing prospective jurors out of the presence of the parties and without stating the reasons therefor. However, prior cases have held that parties need not be present when the trial court excuses prospective jurors before the case is called for trial. State v. Edwards, 406 So.2d 1331 (La.1981), cert. den., 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 467 (1982); State v. Sheppard, 350 So.2d 615 (La.1977); State v. Kirts, 447 So.2d 1 (La. App. 3 Cir.1983).

PLAINTIFF'S CONTRIBUTORY NEGLIGENCE
Plaintiff contends that the jury manifestly erred in finding that plaintiff was 50% contributorily negligent in that no evidence *560 was provided the jury which would tend to show that plaintiff did or failed to do anything to bring about her fall and resulting injury.
LSA-C.C. art. 2323 provides that a plaintiff whose negligence contributes to his own injuries for which he seeks damages shall have his claim reduced in proportion to his degree of fault. In order for the jury to properly reduce plaintiff's award, plaintiff's own negligence must have contributed to her injuries. In the typical grocery store slip and fall case the plaintiff does not have a duty to maintain a constant watch of the floor on which he is walking, while the owners of the premises have a high duty of care in keeping the aisles of their establishment clean. The rationale is explained in Kavlich v. Kramer, 315 So.2d 282, 284 (La.1975):
"Self-service grocery stores require customers to look for and to find the objects which they wish to purchase. These objects are placed upon shelves of various sizes and heights. Discernment of a particular object for purchase requires fairly strict surveillance of the shelving in order to discover the item desired. Numerous items displayed upon shelving along the aisles or walkways in self-service stores entice the customers to focus their eyes upon the display rather than on the surface upon which they walk. Guy v. Kroger Company, 204 So.2d 790 (La.App.2d Cir. 1967); Dever v. George Theriot's, Inc., 159 So.2d 602 (La.App. 3rd Cir.1964)."
Under certain circumstances a grocery store patron could be negligent in contributing to her own accident and injuries; for instance, where the shopper actually sees a potentially dangerous condition and fails to take reasonable precautions to avoid the danger. See Lee v. K-Mart Corp., 483 So.2d 609 (La.App. 1 Cir.1985), writ den., 484 So.2d 661 (La.1986). Also, it is arguable that, under certain circumstances, a store patron could fail to see a hazard which she reasonably should have seen and that by her failure she negligently caused her own injuries. However, several recent grocery/department store slip and fall cases specifically indicate that a patron's slipping and falling on a supermarket floor does not give rise to an inference of negligence on the part of the store patron. See Bonnette v. K-Mart, 503 So.2d 728 (La. App. 3 Cir.1987); Saucier v. Winn-Dixie Louisiana, Inc., 499 So.2d 1033 (La.App. 3 Cir.1986); Lee v. K-Mart Corp., supra.
In the instant case plaintiff slipped and fell in a puddle of water on defendant's supermarket floor. Plaintiff testified that the floor was highly polished and that she had just entered the aisle in which the water was located. Our examination of the trial record reveals no information which tends to show that plaintiff actually saw or should have seen the puddle of water prior to her accident. Without evidence indicating some fault on the part of a store patron in a slip and fall accident, the patron cannot be found responsible, in whole or in part, for her damages. Bonnette v. K-Mart, supra. Since we find no evidence on which the jury could have based a finding of fault on the part of plaintiff the jury's reduction by 50% of plaintiff's damages due to plaintiff's comparative negligence was clear error.

QUANTUM
Following trial the jury valued plaintiff's damages as a result of the May 29, 1983 accident at $1,500.00. However, the jury reduced plaintiff's award by 50% due to a finding that plaintiff was contributorily negligent. Plaintiff contends that the jury abused its discretion in valuing plaintiff's damages at only $1,500.00.
Copies of plaintiff's and defendant's trial court exhibits indicate that plaintiff's physician, chiropractor and other medical bills from the date following plaintiff's slip and fall accident through trial date totaled over $4,800.00. There is some evidence indicating, however, that not all of plaintiff's medical bills submitted were incurred as a result of plaintiff's slip and fall accident. Plaintiff saw physical therapist Mr. Noel after her slip and intermittently up until June 1984, when she was reinjured in an automobile accident and began seeing him on a more regular basis. After her June 1984 auto accident, plaintiff experienced increased sensations of pain and it is entirely *561 plausible that part of the cost of physical therapy was a result of the plaintiff's auto accident.
Further, plaintiff had been treated by a chiropractor, Dr. Sidney Rud, from 1975 until shortly after her slip and fall, during which time she reported pains in her right shoulder, neck, thoracic and mid-dorsal areas. Plaintiff was also treated during a period from 1980 through 1982 for various ailments including sinus headaches, chest pains, and a kidney infection.
The jury could have reasonably attributed some of plaintiff's cervical and thoracic problems to causes which were exhibited prior to plaintiff's slip and fall accident. It would therefore be reasonable for the jury to have concluded that many of the medical expenses incurred by plaintiff were not a result of her May 29, 1983 slip and fall accident. Added to this is the weight which the jury could have given to inconsistent statements given to plaintiff's treating physicians. While plaintiff was treated for approximately eight years prior to her slip and fall accident for shoulder, neck, thoracic and mid-dorsal pains, she apparently did not reveal this information to treating physicians. When asked, plaintiff testified that she had told her chiropractor, Dr. Rud, about a previous 1973 injury; however, this statement was inconsistent with the history which plaintiff gave to Dr. Rud. The jury, being in the position to hear and see witnesses firsthand, is the proper party to evaluate and weigh the evidence and absent manifest error, this court will not disturb its findings. Holmes v. Southeastern Fidelity Ins. Co., 422 So.2d 1200 (La.App. 1 Cir.1982), writ den., 429 So.2d 133 (La.1983).
In summary, plaintiff apparently did sustain cervical and thoracic strains as a result of her slip and fall accident on May 29, 1983. However, her back problems dissipated after approximately one month and her neck was reinjured in the June 1984 auto accident. Plaintiff continued at time of trial to complain of thoracic problems, which complaints caused one physician to diagnose as mild but chronic. Importantly, plaintiff has no loss of wages as a result of the accident, although she missed occasional one-half days totaling two weeks due to pain. A jury finding of no future lost wages under these circumstances is not manifestly erroneous. Plaintiff's inconsistent statements made during trial also likely affected her credibility in the minds of the jury, and such matters are properly considered by the trier of fact. Johnson v. Beavers, 496 So.2d 1251 (La.App. 5 Cir. 1986).
In light of the above findings, we conclude that the jury's award of $1,500.00 for plaintiff's damages as a result of her slip and fall accident is not an abuse of discretion.

COURT COSTS
Defendant answered the appeal contending that the trial judge manifestly erred in assessing all costs of court to defendant at a hearing to allocate court costs. However, since we have found an absence of evidence indicating fault on the part of plaintiff, defendant is liable for 100% of plaintiff's damages and all costs of court.
For the foregoing reasons, the judgment of the trial court is reversed insofar as it finds plaintiff, Pamela D. Brown, guilty of 50% comparative negligence. In all other respects, the trial court's judgment is affirmed. All costs of this appeal are assessed to defendant.
REVERSED IN PART AND AFFIRMED IN PART.
NOTES
[*] Hon. William A. Culpepper, Judge, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.