KNOLL, Judge.
Dixieland Foods, Inc. and its insurer, State Farm Fire & Casualty Company (hereafter collectively Dixieland), appeal an adverse judgment in favor of Jeane Ardoin for personal injuries she received when she tripped over a garden hose in a Dixieland grocery store. The trial court determined that Dixieland created an unreasonable risk of harm by putting a hose across a grocery aisle to thaw a refrigerated box, knowing customers would have to pass while their attention was on the shelves and not the floor. It awarded Mrs. Ardoin general damages of $40,000 and stipulated medical expenses in the amount of $17,312.36. Dixieland appeals, contending the trial court erred: (1) in finding the hose created an unreasonable risk of injury; (2) in failing to find Mrs. Ardoin guilty of comparative negligence; and, (3) in awarding an excessive amount of general damages. We affirm.
FACTS
On March 4, 1983, Mrs. Ardoin and her 4 year old granddaughter were shopping in Dixieland’s self-service supermarket in Opelousas. As Mrs. Ardoin pushed her shopping cart, partly filled with groceries, down one of the aisles, the wheels of the cart hit a garden hose stretched across the aisle, causing her to fall forward, though not all the way to the floor, trip on the hose, and strike her left knee on the back of the shopping cart. Barry Lafleur, one of Dixieland’s employees, had placed the hose across the aisle to defrost the refrigerated boxes which contained the vegetables and fruit. By hooking a hose to a faucet in the meat market and running it across the aisles, Lafleur could hose the coils with water and defrost them in several hours. As a result of the accident, Mrs. Ardoin was diagnosed as having an internal derangement of the knee and damage to the lateral femoral condyle; she received a series of steroid injections and eventually underwent surgery to the knee.
DIXIELAND’S LIABILITY
Dixieland contends that the trial court erred in its conclusion that the placement of the hose across the aisles posed an unreasonable risk of harm, and accordingly it was not liable under either the theory of negligence or strict liability.
A storekeeper is not the insurer of the safety of its customers. Gonzales v. Winn-Dixie Louisiana, Inc., 326 So.2d 486 (La.1976). Nonetheless, Louisiana jurisprudence, cognizant that a customer’s attention is drawn toward the inspection, location and selection of merchandise displayed on shelves and counters, recognizes that a storekeeper has the duty of maintaining a safe passageway for its patrons. Gourges v. Schwegmann Bros. Giant Super Mkts., 339 So.2d 929 (La.App. 4th Cir.1976); Ferrington v. McDaniel, 336 So.2d 796 (La.1976).
After carefully reviewing the record, we conclude that the trial court’s determination that Dixieland breached its duty by placing a hose across a passageway in its self-service grocery store was fully supported by the evidence and not clearly wrong. However, while the learned trial *109 court found defendants were liable in strict liability, we find these facts more appropriately determine Dixieland’s liability under the theory of general negligence rather than strict liability and so hold. We recognize that under either theory of liability, the court must determine if the risk which caused the injury is within the ambit of protection of the duty owed. McCormick v. Insured Lloyds Ins. Co., 488 So.2d 491 (La.App. 3rd Cir.1986). The hose was not defective and the aisle was not defective, but the combination of the hose in the aisle of the grocery store in these given circumstances, created a dangerous condition which was a breach of the duty owed. A customer shopping in a supermarket and focusing on the shelves is not expecting to find a garden hose lying across the aisle, and could easily be distracted from noticing it. See Gonzales, supra; Ferrington, supra. In the case sub judice, Mrs. Ardoin was pushing her partially filled cart through the aisles when her cart struck the hose, causing her to hit her knee on the back of the cart. An eyewitness saw Mrs. Ardoin trip and almost fall. Upon seeing the hose in the aisle, the eyewitness concluded that Mrs. Ardoin tripped when the cart hit the hose. Under these circumstances, Mrs. Ardoin clearly established a prima facie case of negligence and the burden shifted to Dixieland to present evidence to exculpate itself from the presumption that it was negligent. See Saucier v. Winn-Dixie Louisiana, Inc., 499 So.2d 1033 (La.App. 3rd Cir.1986).
In the present case Dixieland seeks to exculpate itself, arguing that the hose was red and clearly visible against the off-white floor, and that a caution sign was erected near the boxes which warned that the floor may be wet. We find, as did the trial court, that neither fact frees Dixieland from liability. The shelves and boxes distract a shopper’s attention and the shopping cart blocks the view of objects on the floor immediately in front of it. Therefore, the color of the hose was an insufficient protective measure. Furthermore, the caution sign was ineffective. The evidence preponderates that the sign was erected on the opposite end of the aisle from where the accident occurred, and even if it had been visible to Ardoin, it warned only against a wet floor, not the presence of a hose across the aisle.
It was uncontradicted that Dixieland had previously used an alternative method of thawing the coils, i.e., the food items would be removed temporarily overnight, and the boxes thawed during the evening hours while the store was closed. The method of using the hose to defrost the box at the time of the accident, however, was chosen simply because it was faster.
Therefore, we find no error in the trial court’s finding of liability on the part of Dixieland.
COMPARATIVE FAULT
Dixieland contends that the trial court erred in failing to assess Mrs. Ardoin with some degree of comparative fault. Dixieland reiterates its argument that Mrs. Ardoin should have seen the red hose in the aisle or should have observed it when her cart crossed over it.
In Brown v. Great Atlantic & Pacific Tea Co., Inc., 509 So.2d 557, 560 (La.App. 3rd Cir.1987), a case in which we concluded that a jury erred in finding a plaintiff partially at fault in a slip-fall case, we stated:
“Under certain circumstances a grocery store patron could be negligent in contributing to her own accident and injuries; for instance, where the shopper actually sees a potentially dangerous condition and fails to take reasonable precautions to avoid the danger. See Lee v. K-Mart Corp., 483 So.2d 609 (La.App. 1 Cir.1985), writ den., 484 So.2d 661 (La.1986). Also, it is arguable that, under certain circumstances, a store patron could fail to see a hazard which she reasonably should have seen and that by her failure she negligently caused her own injuries. However, several recent grocery/department store slip and fall cases specifically indicate that a patron’s slipping and falling on a supermarket floor does not give rise to an inference of negligence' on the part of the store patron. See Bonnette v. Aetna Life & *110 Cas. Ins. Co., 503 So.2d 728 (La.App. 3 Cir.1987); Saucier v. Winn-Dixie Louisiana, Inc., 499 So.2d 1033 (La.App. 3 Cir.1986); Lee v. K-Mart Corp., supra.”
Our thorough review of the record reveals no testimony which tends to show that Mrs. Ardoin actually saw or should have seen the hose across the aisle. Mrs. Ardoin testified that she did not see the hose before striking it with her cart. In light of the jurisprudential pronouncements in Gonzales, supra, where it was clearly recognized that a self-service grocery system, requires customers to focus their attention on the shelves, instead of concentrating on the aisles, we can not find that Mrs. Ardoin was at fault in failing to see the hose. Therefore, in the absence of evidence indicating some fault on Mrs. Ar-doin’s part, we find that the trial court did not err in failing to east her partially at fault.
QUANTUM
Dixieland contends that the trial court’s award of $40,000 in general damages is excessive. It argues that the trial court misconstrued the orthopaedic surgeon’s assignment of anatomical disability, and that the general damage award is out of line with awards for other similar injuries.
It is axiomatic that an appellate court should not disturb the trial court’s award for general damages absent an initial determination that the fact finder abused its discretion under the facts of a particular case. Reck v. Stevens, 373 So.2d 498 (La.1979). In Reck, at page 501, the Supreme Court noted:
“Thus, the initial inquiry must always be directed at whether the trier court’s award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact’s ‘much discretion,’ La.Civ.C. art. 1934(3) in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive, or insufficient. Only after such determination of abuse has been reached, is a resort to prior awards appropriate under Coco [v. Winston Industries, Inc., 341 So.2d 332 (La.1977)], for purposes of then determining what would be an appropriate award for the present case.” (Citations and footnotes omitted.) (Emphasis added.)
Mrs. Ardoin first received medical attention for her injured left knee on March 7, 1983, three day after the accident, from her family physician, Dr. Charles Aswell. He found swelling of the knee with noticeable color changes, and treated her conservatively with pain medication and steroid injections; as of the time of trial he was still treating her for continued knee pain.
On November 6, 1984, Mrs. Ardoin sought treatment from Dr. Kenneth Adat-to, an orthopaedic surgeon, who had treated her in 1981 for torn cartilage in the left knee. Dr. Adatto had not seen Mrs. Ardoin since he discharged her on September 15, 1981, with a 20% disability to the knee. Mrs. Ardoin testified that between her first injury and her injury at the Dixieland store, her knee had healed and she was free from pain. Upon examination of the latest injury, Dr. Adatto noted swelling, pain and tenderness in Mrs. Ardoin’s left knee, and attempted to resolve the problem nonsurgi-cally with a series of steroid injections of eelestone xylocaine. On January 30, 1985, after conservative treatment produced no positive results, Dr. Adatto performed or-thoscopic surgery on Mrs. Ardoin’s left knee and found a damaged lateral femoral condyle, a problem not encountered in her 1981 surgery. During the surgery, Dr. Adatto inserted instruments into the left knee and shaved the femoral condyle. Upon discharge on June 4,1985, Dr. Adatto increased the disability of Mrs. Ardoin’s knee from the 20% he assigned as a result of the first accident, to 25%.
Mrs. Ardoin testified, and the medical testimony corroborated, that she suffered knee pain and intermittent swelling for over a year after the accident, and before surgery she was required to use crutches for some time to relieve the knee pain. She *111 testified that as of the time of trial, her knee still hurts and continues to swell after activity. Since the accident she has been unable to do housework or cooking, and she can no longer go horseback riding, an activity she enjoyed prior to the accident at Dixieland.
After thoroughly examining the record, in light of the particular injuries involved, and the pain and inconvenience Mrs. Ardoin suffered, we find no abuse of discretion in the trial court’s general damage award.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Dixieland and its insurer, State Farm.
AFFIRMED.